IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

K.K., a Minor, by and through     :
John Knowles and Joanne Knowles,
her parents, and JOHN and         :
JOANNE KNOWLES, individually,
and A.S., a Minor, by and         :
through Lisa Stanko and Scott
Stanko, her parents, and LISA     :
and SCOTT STANKO, individually,
     Plaintiffs               :

       vs.                       :    CIVIL NO. 1:CV-04-2290

GERALD WEEKS, GEORGE KELLY,        :
ROBERT J. REED, CUMBERLAND
VALLEY SCHOOL DISTRICT, and        :
JOHN DOES I, II, III, IV,
VI, VII, VIII, IX and X,           :
     Defendants

M E M O R A N D U M

*I.    Introduction*

     Plaintiffs John and Joanne Knowles, individually and
on behalf of K.K., a minor, and Lisa and Scott Stanko,
individually and on behalf of A.S., a minor, have filed this
lawsuit under 42 U.S.C. § 1983, alleging that Defendants
Cumberland Valley School District ("CVSD"), Gerald Weeks
("Weeks"), George Kelly ("Kelly"), and Robert J. Reed ("Reed")
violated their federal constitutional rights to be free from
interference in one's familial relationship and to be free from
sexual or other violent assault.  Plaintiffs include John Does

I, II, III, IV, VI, VII, VIII, IX, and X as Defendants.[1]
Plaintiffs also include supplemental state-law claims.

Defendants CVSD, Weeks, and Kelly have moved for
summary judgment (docs. 51, 52, 53).  Upon review of the briefs
as well as the record, we will grant summary judgment to CVSD,
Weeks, and Kelly.  We will also decline to exercise jurisdiction
over the supplemental state-law claims against CVSD, Weeks, and
Kelly.  Finally, we will dismiss the John Does named in
Plaintiffs' complaint.

II.   Background

Plaintiffs' lawsuit arises out of alleged acts of
sexual abuse committed by, among others, Defendants Reed and
Weeks, against A.S. and K.K., two minor students at Monroe
Elementary School in Cumberland Valley School District.

A.   Abuse of A.S.

A.S. entered Monroe Elementary School as a
kindergarten student and remained at Monroe until the beginning
of fifth grade.  CVSD Statement of Material Facts ("SMF"), ¶ 12.
Her parents are Plaintiffs Scott Stanko and Lisa Stanko.  *Id*. ¶
13.  According to A.S., she was sexually abused beginning in
second grade and lasting through fifth grade.  *Id*. ¶ 17, 18.
A.S. first revealed the abuse on February 7, 2003, in a note to

---

[1]   Plaintiffs' Complaint does not name John Doe V as a
Defendant.

Lisa Stanko, and she continued to write notes about the abuse over an extended period of time. *Id*. ¶¶ 16, 24. Stanko turned the notes over to the Pennsylvania State Police ("PSP"). *Id*. ¶ 16. A.S. was sexually abused for the first time in second grade in a bathroom at Monroe Elementary School by Defendant Reed. Plaintiffs' SMF, CVSD ¶ 17. According to A.S., other incidents of sexual abuse occurred on and off school property at various locations including: a school bathroom, a blue maintenance shed, a garage, homes, and the township building. CVSD SMF ¶ 20.

The alleged abusers included a number of different people; however, Reed, a custodian at Monroe Elementary, is the only school employee named as a defendant in this action. *Id*. ¶ 19. Gerald Weeks, a former PSP trooper, is the only other alleged participant in the abuse named as a Defendant. Weeks SMF, ¶ 4.

Prior to revealing the abuse to her mother, A.S. never informed anyone at CVSD, including the school's principal, Anna Maria Enders, about the abuse and she never sought treatment from the school nurse. CVSD SMF ¶¶ 21, 22, 25. A.S. claims that she did not tell anyone about the abuse because Trooper Kelly threatened her and her family. Plaintiffs' SMF, CVSD, ¶ 21. Defendants contend that A.S. could not identify any independent witness who observed the sexual abuse, CVSD SMF ¶ 26, although A.S. believes that Mr. Yingst, a Monroe Elementary teacher, knew about the abuse. Plaintiffs' SMF, CVSD ¶ 26.

A.S. withdrew from Monroe Elementary School in November 2002. Plaintiffs' SMF, Kelly ¶ 1.

     B.  *Abuse of K.K.*

     K.K. was a special education student at Monroe Elementary School from kindergarten in 1997 until 2002.  Like A.S., K.K. alleges that she was sexually abused at many of the same locations as A.S.  Weeks SMF ¶ 5.  Her parents are Plaintiffs John and Joanne Knowles.  CVSD SMF ¶ 2.  According to Plaintiffs, K.K. first complained to her parents about irritation from the sexual abuse on October 8, 2002. Plaintiffs' SMF, CVSD ¶ 5.[2]  In response to K.K.'s complaints, the Knowles took her to an OB/GYN.  *Id*.  On October 16, 2002, K.K. first described her injuries and identified Reed by his picture in the school yearbook.  *Id*. ¶ 6.  On October 17, 2002, Joanne Knowles contacted Principal Anna Maria Enders at Monroe Elementary School and informed her of the sexual assault allegedly committed by Defendant Reed.  *Id*. ¶¶ 9, 27.  On October 18, 2002, K.K. described some of Reed's abusive conduct to her parents.  *Id*. ¶ 6.  Prior to K.K.'s disclosure in October 2002, the Knowles had no suspicion that K.K. was being abused. CVSD SMF ¶ 7.  In response to K.K.'s disclosure of the abuse, the Knowles withdrew her from Monroe Elementary School.

---

    [2]  CVSD contends that this occurred on October 18, 2002; however, the record cited by CVSD does not contain a reference to this date.

Plaintiffs' SMF, Kelly ¶ 1.  K.K. was transferred to the middle school and left to be home schooled on December 19, 2002.  *Id.*

       C.   *Abuse Allegations Against Trooper Gerald Weeks*

       In addition to Reed, Plaintiffs also name Gerald Weeks as a defendant who abused K.K. and A.S.  According to Plaintiffs, Weeks sexually abused A.S. and K.K. in the garage at his home; at the homes of Tina Renninger and Cynthia Bowers, who were aides at Monroe Elementary; in a bathroom at the school; in Reed's office at the school; and in a blue shed on school property.  Weeks SMF ¶ 5.  Weeks abused A.S. and K.K. when they were in third and fourth grade.  *Id.* ¶ 12.  Renninger drove A.S. and K.K. to the locations where they were abused off of school grounds.  *Id.* ¶ 6.  During the abuse, there was no mention of Weeks being a police officer, and A.S. did not see anything in Weeks's garage suggesting that he was a police officer; however, A.S. thought he was a police officer because of his attire.  *Id.* ¶ 10; Plaintiffs' SMF, Weeks ¶ 10.  Additionally, A.S. never saw Weeks at school other than when he was involved in the abuse. Weeks SMF ¶ 11.  When he abused A.S. and K.K., Weeks wore "either a blue or a brown outfit and boots that laced up to his knees."  *Id.* ¶ 7.  Weeks's outfit had a patch on the left arm, and possibly the right arm, which said "Cumberland" on it.  *Id.* ¶¶ 8, 9.

Weeks joined the PSP as a trooper in 1988. *Id*. ¶ 13. In 1994, he was assigned to the position of inspection station supervisor at the Carlisle Barracks. *Id*. ¶ 15. This position required Weeks to supervise and monitor Pennsylvania State Inspection Stations, take enforcement action against car dealerships, and conduct annual school bus inspections. *Id*. ¶ 16. While on duty, Weeks wore a standard-issue gray PSP uniform except when he was conducting school bus inspections which required standard-issue dark gray coveralls. *Id*. ¶¶ 17, 18. In June 2000, Weeks was transferred to the position of Coordinator of the Vehicle Fraud and School Bus Safety Unit. *Id*. ¶ 20. Weeks was assigned to PSP headquarters in Harrisburg and was responsible for PSP's seventy-person unit of vehicle fraud investigators. *Id*. ¶ 21. This position required Weeks to wear the standard-issue gray PSP uniform. *Id*. ¶ 22. Weeks held this position until January 2004. *Id*. ¶ 23.

The standard-issue PSP Trooper's uniform consists of, among other things, dark gray trousers and a lighter gray shirt. *Id*. ¶ 25. The uniform has a black patch on each sleeve which says "Pennsylvania State Police Trooper". *Id*. ¶¶ 27, 28. The PSP Trooper's uniform has never been brown or blue and the uniform patch has never said "Cumberland." *Id*. ¶¶ 26, 29.

    D.   *CVSD's Response to the Abuse
         Allegations*

Reed was hired by CVSD in February 1976 and was
responsible for maintenance work both inside and outside Monroe
Elementary School.  CVSD SMF ¶ 90, 91.  There had been no
disciplinary actions or allegations of sexual abuse reported
against Reed at CVSD until the Knowles told Enders in 2002.  *Id*.
¶ 92, 93.[3]

    1.  Principal Anna Maria Enders

Monroe Elementary School's principal, Anna Maria
Enders, was the first CVSD official to find out that the Knowles
thought Reed was engaged in sexual abuse.  According to
Plaintiffs, Enders received an email forwarded from Karen
Schmick, K.K.'s teacher, on October 10, 2002, originally sent
from Mrs. Knowles.  Plaintiffs' SMF, CVSD ¶ 29.  The email
"informed Schmick that K.K. was having irritation in her vaginal
area and that a guy had been touching her."  *Id*.  CVSD claims
that Enders first became aware of the allegations through a
phone call from Mrs. Knowles describing the allegations and her
belief that Defendant Reed was the abuser.  CVSD, SMF ¶¶ 29, 30.

───────────────

    [3]  Plaintiffs claim that Reed was hired by the school
district despite accusations by his daughter that he had
sexually molested her.  Plaintiffs' SMF, CVSD ¶ 93.  Reed's
daughter, however, admitted that the allegations were false and
Children and Youth Services dismissed them as unfounded.  (doc.
101, p. 4).

After she received the telephone call from Mrs. Knowles, Enders followed CVSD protocol and immediately called Children and Youth Services, the county District Attorney, as well as the police. *Id*. ¶ 31. Later that day, Enders was contacted by the State Police regarding the abuse allegations. *Id*. ¶ 33, Plaintiffs' SMF, CVSD ¶ 33. Enders returned to Monroe Elementary that evening and opened the school for the State Police. CVSD SMF, ¶ 34.

Aside from A.S.'s parents, who came forward with additional allegations of abuse in February 2003, Enders never received complaints from anyone else about the sexual abuse of any children. *Id*. ¶¶ 37, 54.

### 2. Superintendents Dr. Anthony Colistra & Dr. Jean Walker

Dr. Anthony Colistra was the Superintendent of Cumberland Valley School District at the time the abuse allegations were relayed to Principal Enders. CVSD SMF ¶ 38. Colistra first became aware of the allegations when he was contacted by Enders. *Id*. ¶ 40. In response to the allegations, Colistra followed the established protocols of Cumberland Valley School District. *Id*. ¶ 41. The day after the allegations were made against Reed, Colistra suspended him and walked him to his custodial closet to remove his personal effects, and then escorted him from the premises of Monroe Elementary School. *Id*. ¶ 46, Plaintiffs' SMF, CVSD ¶ 46. As allegations of abuse by

other CVSD teachers came to light, CVSD followed its protocol of immediately escorting the individual from the school and placing them on administrative leave.[4]   CVSD SMF ¶ 47.

Approximately one month after the state police were notified, Colistra wrote a letter to Trooper Wellman of the PSP offering CVSD's complete assistance in the investigation.  *Id*. ¶ 43.  CVSD officials responded to all of the requests of the State Police over the course of its investigation, and CVSD made every employee available for interview.  *Id*. ¶ 44, 45.

Colistra retired in June 2003 and Dr. Jean Walker took over as CVSD Superintendent.  *Id*. ¶ 48.  When Walker became Superintendent, a number of CVSD employees were on suspension from the abuse allegations.  *Id*. ¶ 49.  Prior to the 2003 school year, Walker met with District Attorney David Freed to determine the status of the suspended teachers for the 2003 school year. *Id*. ¶ 50.  Freed told Walker that while there was no substantive evidence found in the police investigation and charges were not going to be filed, the investigation had not yet been officially closed.  *Id*. ¶ 51.  In response, Walker informed the staff at CVSD of District Attorney Freed's comments, and the suspended employees, with the exception of Defendant Reed, were brought back for the 2003 school year.  *Id*. ¶ 52.

---

[4]  Plaintiffs claim, however, that the School Board refused to require Dr. Colistra's resignation after Lisa Stanko confronted him at a school board meeting regarding his involvement in the sexual abuse.  Plaintiffs' SMF, CVSD ¶ 47.

> D.   *State Police Investigation of*
>      *the Abuse Allegations*

Simon Wellman and Defendant George Kelly, members of the PSP, were assigned to investigate the sexual abuse allegations.  CVSD SMF ¶¶ 68, 69, 80.  During the investigation, CVSD responded to their requests and also permitted Wellman to confiscate as evidence a CVSD computer used by Defendant Reed. *Id.* ¶¶ 76, 77, 80, 85.

Kelly was involved with the investigation for more than a year although on November 3, 2003, the Stankos sent a letter to Colonel Miller of the PSP requesting his removal from the investigation.  *Id.* ¶ 83; Plaintiffs' SMF, CVSD ¶ 83. During his investigation, Kelly conducted twenty-minute interviews with all but five CVSD employees.  *Id.* ¶ 86, 87; Plaintiffs' SMF, CVSD ¶ 86.  The only information Kelly learned from these interviews supportive of the allegations was Patty Heile's––a life skills aide at CVSD for K.K––statements that A.S. was one of only a few people who truly would know if anything happened, and that given Reed's past actions, it was possible that he had engaged in the abuse.  CVSD SMF ¶¶ 88, 103; Plaintiffs' SMF, CVSD ¶ 88.  Reed was not criminally charged as a result of the PSP investigation.  CVSD SMF ¶ 97.

III.   Discussion

   A.   Standard of Review

        Pursuant to Rule 56(c) of the Federal Rules of Civil
Procedure, we may grant summary judgment "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law."  Fed. R. Civ. P.
56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91
L.Ed.2d 265 (1986).  In reviewing the evidence, we must construe
facts and inferences in the light most favorable to the
nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith
Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d
538, 553 (1986).  Summary judgment must be entered for the
moving party "[w]here the record taken as a whole could not lead
a rational trier of fact to find for the nonmoving party."  *Id.*
at 586-87, 106 S.Ct. at 1356, 89 L.Ed.2d at 552 (citations
omitted).

        The moving party bears the initial responsibility of
stating the basis for its motion and identifying portions of the
record which demonstrate the absence of a genuine issue of
material fact.  *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2253, 91
L.Ed.2d at 274.  It can discharge that burden by "showing . . .
that there is an absence of evidence to support the nonmoving

11

party's case." *Id.* at 325, 106 S.Ct. at 2253-54, 91 L.Ed.2d at 275.

An issue is "genuine" "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A fact is "material" when it would affect the outcome of the trial under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211.

When a moving party has carried the burden under Rule 56, the burden shifts to the nonmoving party to demonstrate that an issue of material fact exists. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87, 106 S.Ct. at 1356, 89 L.Ed.2d at 552 (citations omitted). The nonmoving party "must present *affirmative evidence* in order to defeat a properly supported motion for summary judgment," and cannot "simply reassert factually unsupported allegations contained in [the] pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citation omitted). "If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S.Ct. at 2511, 91 L.Ed.2d at 212 (citations omitted). Factual averments in briefs do not

satisfy the nonmoving party's burden.  *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir. 1992).

      *B.  John Doe Defendants*

      We initially consider whether we should dismiss John Doe defendants I, II, III, IV, VI, VII, VIII, IX, and X.  In its reply brief in support of its motion for summary judgment, CVSD notes that Plaintiffs have not amended their complaint or otherwise identified each defendant.  (doc. 101, p. 8, n.2).

      Pursuant to Federal Rule of Civil Procedure 21, we may dismiss a party by our own initiative on just terms at any point in the proceeding.  District courts in our circuit have used Rule 21 to dismiss John Doe parties from an action.  *See, e.g. Adams v. City of Camden*, 461 F. Supp.2d 263, 271 (D.N.J. 2006); *Atlantic Used Auto Parts v. City of Philadelphia*, 957 F. Supp. 622, 625 (E.D. Pa. 1997).  Fictitious party names may be used until there has been a reasonable period of discovery in which to uncover the actual defendants.  *Atlantic*, 957 F. Supp at 625 (quoting *Klingler v. Yamaha Motor Corp., U.S.A.*, 738 F. Supp. 898, 910 (E.D. Pa. 1990)).  If discovery fails to provide the identities of the defendants we may dismiss them.  *Id.* (quoting *Scheetz v. Morning Call, Inc.*, 130 F.R.D. 34, 36 (E.D. Pa. 1990)).  Here, more than two years have passed since the filing of Plaintiffs' complaint and discovery was completed on September 29, 2006.  During this time, Plaintiffs have not amended their complaint or otherwise attempted to name the John

13

Doe defendants.  Therefore, pursuant to Rule 21, we will dismiss the nine John Doe defendants.

   C.  *Cumberland Valley School District*

        Plaintiffs present two claims against CVSD related to the sexual abuse of K.K. and A.S.  First, Plaintiffs contend that CVSD is liable for Reed's conduct because CVSD failed to conduct a proper investigation and subsequently covered up the abuse.  (doc. 1, ¶ 13).  Second, Plaintiffs claim CVSD violated the parent Plaintiffs' Fourteenth Amendment right to make informed decisions about the care and custody of their children by withholding information regarding the safety of K.K. and A.S. at school.[5]  We will grant CVSD's motion for summary judgment on both claims.

        1.  *Monell* Claim

        Pursuant to *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a municipality may be liable under 42 U.S.C. § 1983 for an injury caused by an official policy or custom which violates a constitutional right. Liability does not attach solely because the municipality employs a tortfeasor; *Monell* specifically rejected § 1983

_____

     [5]  Plaintiffs discuss this claim in their brief in opposition to CVSD's motion for summary judgment; however, the complaint appears to assert this claim only against Defendant Kelly.  *See* doc. 1, ¶ 11.  Nonetheless, we will discuss it here.

liability on the basis of respondeat superior.  *Monell*, 436 U.S.
at 691.  Municipal policy is made when a

> "decisionmaker possess[ing] final authority
> to establish municipal policy with respect
> to the action" issues an official
> proclamation, policy, or edict.  A course of
> conduct is considered to be a "custom" when,
> though not authorized by law, "such
> practices of state officials [are] so
> permanent and well-settled" as to virtually
> constitute law.

*Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)
(quoting *Andrews v. City of Philadelphia*, 895 F.3d 1469, 1480
(3d Cir. 1990)).  A plaintiff can establish custom "by proof of
knowledge and acquiescence."  *Bielevicz v. Dubinon*, 915 F.2d
845, 850 (3d Cir. 1990) (quoting *Fletcher v. O'Donnell*, 867 F.2d
791, 793-94 (3d Cir. 1989)).

Municipal liability under *Monell* also has a causation
requirement.  A municipality is not liable "unless action
pursuant to official municipal policy of some nature caused a
constitutional tort."  *Monell*, 436 U.S. at 691.  More
specifically, a municipality may be liable "only when 'execution
of a government's policy or custom, whether made by its
lawmakers or by those whose edicts or acts may fairly be said to
represent official policy, inflicts the injury.'"  *Bielevicz,*
915 F.2d at 850 (quoting *Monell*, 436 U.S. at 694).  Therefore, a
§ 1983 action is not available merely because of the custom or
policy.  Rather, the plaintiff must show that the municipal
policy proximately caused her injuries.  *Bielevicz*, 915 F.2d at

850.  The showing requires a "plausible nexus" or "affirmative

link" between the policy or custom and the violation of

constitutional rights.  *Id*.

A valid *Monell* claim must also show deliberate

indifference on the part of the municipality to the alleged

unconstitutional conduct.  *See Black by Black v. Indiana Area

School Dist.*, 985 F.2d 707, 712 (3d Cir. 1993).  With respect to

deliberate indifference, "'something more culpable [must be

shown] than a negligent failure to recognize [a] high risk of

harm' to plaintiffs."  *Id*. at 712-13 (quoting *Colburn v. Upper

Darby*, 946 F.2d 1017, 1025 (3d Cir. 1991)).  In *Shepard v. Kemp*,

912 F. Supp. 120, 126-27 (M.D. Pa. 1995) (Nealon, J.), a similar

case involving a § 1983 claim against a school based on a

teacher's sexual abuse of a student, the court described the

complete inquiry as follows:

> The policy here would have to be a practice
> or custom of permitting teachers to engage
> in unconstitutional conduct toward students
> by physical and sexual abuse . . . .
> Moreover, this practice would have to play
> an affirmative role in bringing about the
> constitutional deprivations.  Furthermore,
> with this policy or custom in place, the
> defendants would have to be deliberately
> indifferent to the application of this
> policy or custom to the plaintiffs.[6]

---

[6]  In its brief in support of summary judgment, CVSD
mischaracterizes our inquiry, contending that in evaluating
potential *Monell* liability, we must determine "whether the
District had any prior knowledge of sexual abuse of either K.K.
or A.S." (doc. 61, p. 13).  Our examination of whether there
was a practice or custom of permitting teachers to engage in
unconstitutional conduct such as abuse is broader in scope.  It

In moving for summary judgment, CVSD contends that Plaintiffs have not submitted evidence creating a genuine issue of material fact as to either the existence of a policy of disregarding sexual assault or deliberate indifference by CVSD to the sexual assaults against K.K. and A.S.  We agree that Plaintiffs have failed to create a genuine issue of material fact as to the existence of an actionable policy or custom.

In support of their claim, Plaintiffs' submit evidence regarding CVSD's actions after the abuse allegations came to light.  The focus of our inquiry, however, begins with whether CVSD had a policy or custom of disregarding the misconduct of its employees which caused the abuse of A.S. and K.K.  By failing to present evidence showing a prior awareness by CVSD officials to allegations of sexual assault or other abuse by its teachers against students, Plaintiffs cannot show that the policy or custom caused the abuse of K.K. and A.S., and that CVSD was deliberately indifferent to the abuse.

As noted by CVSD, the claims presented by Plaintiffs are similar to those in *Shepard v. Kemp*.  In *Shepard*, a § 1983 action against, among other defendants, a school teacher and the school district, there were a number of incidents and rumors

---

considers whether CVSD was aware of and failed to discipline sexual abuse committed by any teacher against any student.  *See Shepard*, 912 F. Supp. at 126-27.  After evaluating whether such a policy or custom existed, we can then determine if the policy or custom caused the constitutional violations claimed by the Plaintiffs.

regarding a teacher's relationship with a student. *Id.* at 127. While the principal was aware of the rumors, the parents and school officials had not received any complaints concerning the teacher's misconduct. *Id.* at 126. Eventually, the students disclosed the abuse to their parents, who in turn informed the school's principal. *Id.* The court granted summary judgment, explaining that despite warning signs regarding the teacher's relationship with the students

> none of them implicate[d] [the teacher] or
> the School District to the degree that it
> can be concluded that the failure to train,
> supervise, oversee, discipline, or remedy,
> constituted a policy, practice or custom
> that played an affirmative role in bringing
> about those incidents. There is no evidence
> of concealment, of encouragement or
> acceptance of improper behavior of [the
> teacher] and there is an absence of teacher
> complaints or intimidation or discouragement
> of student complainants.

*Id.* at 127. Lacking this evidence, the court concluded that the school district did not have a policy or custom of permitting teachers to engage in unconstitutional conduct toward students. The court explained that the record "simply does not disclose 'a pattern of persistent and widespread unconstitutional practices that had become so permanent and well-settled as to have the force and effect of law.'" *Id.* (quoting *Jane Doe A. v. Special School District*, 901 F.2d 642, 646 (8th Cir. 1990)).

Similarly, Plaintiffs' failure to produce evidence showing concealment, encouragement, acceptance, or even any awareness of sexual abuse against A.S., K.K., or other Monroe

Elementary students prohibits Plaintiffs from proceeding on their *Monell* claim.  According to Plaintiffs, Principal Enders was first informed of the abuse of K.K. on October 10, 2002, from an email forwarded to her by Karen Schmick, K.K.'s teacher. Plaintiffs' SMF, CVSD ¶ 29.  K.K. claims that the abuse occurred over a three-year period prior to October 2002 at which time the Knowles found out about it, told Schmick, and informed Enders shortly thereafter.  *Id.;* CVSD SMF, ¶¶ 29, 30.  Before K.K.'s disclosure in October 2002, K.K.'s parents had had no suspicion that their daughter was being abused.  CVSD SMF ¶ 7.  With respect to A.S., the Stankos first learned of the abuse of their daughter in February 2003.  *Id.* ¶ 24.  Prior to this, A.S. had not told any CVSD officials of being abused.  *Id.* ¶ 21.  Aside from A.S. and K.K., Principal Enders had not received complaints from anyone else about sexual abuse of any other Monroe Elementary students.  *Id.* ¶ 37.  Therefore, the record shows that CVSD officials were not aware of allegations of sexual abuse against K.K., A.S., or any other students at Monroe Elementary School prior to the disclosure of such abuse by K.K. and A.S. to their parents, at the earliest, in October 2002.

Moreover, Plaintiffs' references to a few instances of teacher misconduct do not disclose a pattern of persistent and widespread unconstitutional conduct so permanent and well-settled as to create a genuine issue of material fact regarding an impermissible custom or policy.  In its statement of

undisputed material facts, Plaintiffs admit to CVSD's assertion
that "[o]ther than A.S.'s parents who came forward in February
2003, Enders never received complaints from any other person,
parent, or student about any other children being abused." *See*
CVSD SMF ¶ 37, Plaintiffs' SMF, CVSD ¶ 37.  In admitting this
statement, Plaintiffs claim that a teacher's aide "reported
allegations of misconduct involving Mr. Yingst keeping well-
developed young ladies in his classroom during lunch."
Plaintiffs' SMF, CVSD ¶ 37.  Other instances cited by Plaintiffs
include a teacher's aide informing Reed that it was
inappropriate to ask K.K. to dance with him and Principal Enders
informing Reed that it was inappropriate to hug female students.
*Id*. ¶ 53.  These occurrences do not amount to the type of
pattern or widespread conduct required by *Monell*.  Our
conclusion is reinforced by Plaintiffs' admission that "[a]side
from the parents of K.K. and A.S., there were no other
complaints of inappropriate sexual touching to the District from
anybody about Reed or any other District employee" CVSD SMF
¶ 54, 94.

　　　　Here, Plaintiffs have not presented evidence showing
any awareness and concealment of misconduct.  Like *Shepard*, we
conclude that there is no genuine issue of material fact as to
the existence of any custom or policy on the part of CVSD of
permitting teachers to engage in abusive conduct toward

students.  Accordingly, we will grant CVSD's motion for summary
judgment on this claim.

     2.  <u>Substantive Due Process Claim</u>

     Plaintiffs' second claim against CVSD is based on the
protection of the parent-child relationship through the
Fourteenth Amendment's Due Process Clause.  Plaintiffs contend
that the Due Process Clause prohibits governmental interference
with the familial relationship, protects parents' rights to make
critical decisions about the upbringing of their children,
including the right to control their children's education, and
provides a protected liberty interest in preserving the life and
safety of a minor child.

     Plaintiffs claim that CVSD infringed the Stankos' and
Knowles' rights to make informed decisions about the safety of
their children at school by conduct which withheld pertinent
information.  (doc. 93, p. 16).  Specifically, Plaintiffs allege
that CVSD failed to conduct its own investigation after the
revelation of the abuse allegations, it permitted the
superintendent to make public statements that the police
investigation would be closed without the filing of criminal
charges, and it reinstated Reed "even though it had been
revealed that he had previously alleged to have [sic] abused his
daughter and [Children & Youth Services] founded the allegations
against him."  *Id*.

21

"The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).  A parent's liberty interest in the care, custody, and control of their children is a fundamental right protected by the Fourteenth Amendment.  *See Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).  The Third Circuit has applied this liberty interest to permit a parent to proceed under § 1983 for the deprivation of the life or physical safety of a minor child caused by state action.  *See Estate of Bailey by Oare v. York County*, 768 F.2d 503, 509 n.7 (3d Cir. 1985), *overruled in part on other grounds*, *DeShaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189, 201 (1989).

More recently, in *McCurdy v. Dodd*, 352 F.3d 820 (3d Cir. 2003), the Third Circuit narrowed the scope of this due process right in two ways.  First, the court declined to find a protected liberty interest in the relationship between a parent and an adult child.  *Id.* at 829.  Second, and more important for our purposes, the court would not extend the liberty interest noted in *Bailey* to every state action which might affect the parent-child relationship.  *Id.* at 830.  In *McCurdy* this limitation precluded a parent from recovering damages from a police officer who shot and killed his son.  The court concluded that the officer's shooting was an action directed only at the

22

son, not at the parent-child relationship.  *Id.*  Therefore, a parent's cause of action under § 1983 for interference with the parent-child relationship must be predicated upon state action deliberately targeting that relationship.  *Id.  See also Russ v. Watts*, 414 F.3d 783, 787-91 (7th Cir. 2005) (discussing the holdings of five other circuit courts denying recovery for damage to the parent-child relationship based on the incidental effect of state action).

In distinguishing state action taken with the intent of affecting the parent-child relationship and state action incidentally affecting the parent-child relationship, the *McCurdy* court explained that the Due Process Clause does not provide protection from every state action that affects a fundamental right.  *Id.* at 827.  Instead, due process protection "has historically been applied only to '*deliberate* decisions of government officials to deprive a person of life, liberty, or property.'"  *Id.* (quoting *Daniels v. Williams*, 474 U.S. 327, 328 (1986)).  With this in mind, the court explained: "It would . . . stretch the concept of due process too far if we were to recognize a constitutional violation based on official actions that were not directed at the parent-child relationship."  *Id.* at 830.

Moving to Plaintiffs' claim, we begin with the Third Circuit's guidance in evaluating substantive due process claims. As noted in *McCurdy*, "Although we are mindful of the broad

23

remedial purposes of § 1983, we must also recognize that, in §
1983 cases grounded on alleged parental liberty interests, we
are venturing into the murky area of unenumerated constitutional
rights." *Id.* at 825 (quoting *Troxel*, 530 U.S. at 92 (Scalia, J.
dissenting)).  Therefore, "scrupulous attention to the
guideposts that have previously been established" is required.
*Id.* at 826 (quoting *Boyanowski v. Capital Area Intermediate
Unit*, 215 F.3d 396, 400 (3d Cir. 2000)).

        We will dismiss Plaintiffs' substantive due process
claim against CVSD because the evidence does not show that CVSD
deliberately targeted the parent-child relationship of the
Knowles and the Stankos.  Plaintiffs allege that CVSD

> engaged in a practice, custom, and usage of
> covering up and protecting perpetrators,
> avoiding a proper and complete investigation
> in the more proper interests of victimized
> students, and even special-needs children *in
> their desire to prevent public disclosure of
> the wrongs that occurred while these
> children were in their custody.* (doc. 1, ¶
> 13) (emphasis added).

In opposing summary judgment, Plaintiffs explain that CVSD's
actions in the wake of the disclosure of the abuse allegations
violated "the rights of the Knowles and Stankos to make informed
decisions about the care and custody of their children in that
information was withheld from that [sic] about the true safety
of their children at school."  (doc. 93, p. 16).

        Plaintiffs cannot proceed under this theory in light
of *McCurdy*.  As noted, the Fourteenth Amendment's Due Process

Clause protects a family from deliberate state interference in the parent-child relationship.  It does not, however, convert state action which has an incidental or indirect effect on the parent-child relationship into a constitutional violation actionable through § 1983.  Plaintiffs allege that CVSD engaged in a cover-up of the sexual abuse at Monroe Elementary "to prevent public disclosure of the wrongs that occurred while [A.S. and K.K.] were in their custody."  In another portion of Plaintiffs' brief, they argue that CVSD's purported cover-up was taken "in an effort to protect Reed and not for the safety and well-being of the minor children who attended the school, to whom they had a duty." (doc. 93, p. 13).  Critically, Plaintiffs do not allege or argue that CVSD's actions were deliberately directed at the parent-child relationship as required by *McCurdy*.  Instead, Plaintiffs allege that CVSD's actions, taken on the basis of its desire to protect Reed and avoid disclosing that sexual abuse of a student happened at one of its schools, also had the effect of damaging the parent-child relationship by withholding information about the safety of students from parents.  We disagree.  Any interference or damage to the parent-child relationship was an incidental effect of CVSD's refusal to disclose the truth about the abuse at Monroe Elementary School.  Without allegations or evidence that CVSD's actions in covering up the sexual abuse were deliberately directed toward interfering with the parent-child relationship

of the Stankos or the Knowles, Plaintiffs' § 1983 claim may not proceed.

>    D.   *Gerald Weeks*

Weeks, a former PSP trooper, has also moved for summary judgment.  Plaintiffs allege that Weeks was involved in the sexual abuse of A.S. and K.K.  In seeking summary judgment, Weeks contends that Plaintiffs fail to show that he was acting "under color of state law" as required by 42 U.S.C. § 1983.

Section 1983 is not a source of rights but instead serves as a vehicle to vindicate federal rights.  *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).  In order to state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-55, 101 L.Ed.2d 40 (1988).  Plaintiffs claim that Weeks violated their Fourteenth Amendment right "not to suffer sexual assaults and other violent assaults at the hands of state actors."  (doc. 1, ¶ 6).  *See Ingraham v. Wright*, 430 U.S. 651, 673-74, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Black*, 985 F.2d at 709 n.1 (Fourteenth Amendment claim filed by a student sexually assaulted by a school bus driver). In our § 1983 analysis, we consider whether Weeks was acting "under color of state law" when he abused A.S. and K.K.

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West* 487 U.S. at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Typically, state employment is sufficient to render a person a state actor. *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 24 (3d Cir. 1997). Every act of an on-duty state employee, however, is not state action for purposes of § 1983. *Id.* "For instance, a state employee who pursues purely private motives and whose interaction with the victim is unconnected with his execution of official duties does not act under color of law." *Id.* (citing *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1150 (3d Cir. 1995)). Alternatively, an off-duty police office who flashes a badge or purports to act pursuant to official authority does act under color of law. *Id.* (citing *Rivera v. La Porte*, 896 F.2d 691, 696 (2d Cir. 1990)). "Thus, the essence of section 1983's color of law requirement is that the alleged offender, in committing the act complained of, abused a power or position granted by the state." *Id.*

The Third Circuit conducted this color of state law analysis in *Barna v. City of Perth Amboy*, 42 F.3d 809 (3d Cir. 1994). Off-duty police officers were involved in a purely personal dispute while outside of their jurisdiction. The court

concluded that they were not state actors despite one officer's use of a state-issued nightstick during the dispute. *Id.* at 817-19. "[T]here was no evidence that the alleged assault occurred as a result of official police concerns; on the contrary, the evidence indicates that the assault arose out of the officer's familial and personal concerns." *Id.* at 818. While the nightstick was an objective indication of police authority, at the time it was used the officer did not have actual authority to use it and its use was not as an assertion of official authority by the off-duty officer. *Id.*

In contrast, in *Black v. Stephens*, 662 F.2d 181 (3d Cir. 1981), the Third Circuit found sufficient indicia of state authority to conclude that on-duty police officers were acting under color of law. In *Black*, the § 1983 claim arose out of an arrest and prosecution based on a traffic accident between the police officer and the plaintiff. *Barna*, 42 F.3d at 818 (discussing *Black*). The court determined that the officer was acting under color of law because the officer was on-duty, he was wearing police apparel, and he had initiated contact with the plaintiff because he believed the plaintiff's activity required investigation. *Id.* Therefore, in *Barna* and *Black* a distinguishing factor in the color of law analysis was whether the constitutional violation "occurred as a result of official police concerns" or it "arose out of the officer's familial and personal concerns." *Id.*

To determine whether there is a genuine issue of material fact as to Weeks's abuse of his position as a PSP officer, we must examine the totality of the circumstances of the abusive conduct as well as the use of any indicia of state authority.  As Weeks notes, "[i]t is not enough to consider simply whether or not the police officer was wearing a uniform or whether the officer was on or off duty at the time of the incident."  *Pryer v. City of Philadelphia*, No. Civ.A. 99-4678, 2004 WL 603377, at *4 (E.D. Pa. Feb. 19, 2004).  Similarly, the use a police-issue weapon, by itself, is insufficient to conclude that Weeks was acting under color of state law.  *Barna*, 42 F.3d at 818.

In moving for summary judgment, Weeks claims that his actions do not show that he was acting or purporting to act under state authority.  He contends that he was not wearing a Pennsylvania State Police trooper uniform while engaging in the abuse, there is no evidence that he was using a state-issued weapon, and it is unclear whether he was on duty at the time of the abuse.  (doc. 70, p. 10).  He claims that his official duties only put him at Monroe Elementary School to conduct school bus inspections and would not have put him in or provided access to the locations where the abuse occurred.  (doc. 116, p. 6).  Second, Weeks contends that criminal sexual abuse is not a traditional police function and, therefore, is not state action. (doc. 70, p. 10).  Third, Weeks argues that Plaintiffs fail to

present evidence showing that his position as a police officer enabled the sexual abuse. *Id*. He claims that because other individuals who may have participated in the abuse were not police officers, his position as a police officer could not have enabled the abuse. *Id.* at 11.

In opposing summary judgment, Plaintiffs argue that Weeks's employment with the state police provided access to the school. According to Plaintiffs, Weeks's position in the patrol unit "gave him justification and explanation . . . to be at the Monroe Elementary School" because he was required to perform spot checks on school buses. (doc. 92, p. 13). Additionally, Plaintiffs claim that Weeks wore his police uniform along with his police hat and state-issued weapon during the abuse. *Id.* at 14.[7]

Plaintiffs have not submitted sufficient evidence to create a genuine issue of material fact as to whether Weeks was acting under color of law when he engaged in the sexual abuse of K.K. and A.S. Weeks's sexual abuse was a purely private activity because it was not a police action "calculated to preserve the peace, protect life and property, arrest violators

---

[7] In arguing that Weeks was acting under color of state law, Plaintiffs note that Weeks was suspended in November 2003 during an investigation for child pornography, he is addicted to pornography, and he was convicted for a child pornography offense. (doc. 92, p. 14). This is not relevant to our determination whether Weeks was acting under color of state law for purposes of § 1983 liability when he engaged in the alleged sexual abuse of A.S. and K.K.

of the law or prevent crime." *Nonnemaker v. Ransom*, Civ. No.
99-912, 1999 U.S. Dist. LEXIS 8108, at *3 (E.D. Pa. May 26,
1999).  We recognize, however, that purely private conduct may
be action taken under color of state law if such conduct
occurred in the performance of a police officer's official
duties.  *Jackson-Gilmore v. Dixon*, No. Civ. A. 04-03759, 2005 WL
3110991, at *10 (E.D. Pa. Nov. 18, 2005) (quoting *Basista v.
Weir*, 340 F.2d 74, 80-81 (3d Cir. 1965)).  In examining Weeks's
conduct and Plaintiffs' evidence, however, Plaintiffs have not
shown that Weeks was either acting or purporting to act in his
official capacity in abusing A.S. and K.K.

        First, Plaintiffs fail to present evidence showing
that Weeks was wearing a PSP uniform during the abuse.  A.S. and
K.K. claim that when Weeks allegedly abused them he wore "either
a blue or a brown outfit and boots that laced up to his knees."
Weeks SMF ¶ 7.  Weeks's outfit also had a patch that said
"Cumberland" on it.  *Id*. ¶ 9.  The uniform of PSP troopers,
however, consists of a gray shirt and darker gray trousers.  *Id*.
¶¶ 24, 25.  The PSP Trooper uniform has a patch on each sleeve
of the gray uniform shirt.  *Id*. ¶ 27.  The patch is black and
says "Pennsylvania State Police Trooper."  *Id*. ¶ 28.  Notably,
the patch on the sleeve has never said "Cumberland."  *Id*. ¶ 29.
Additionally, the PSP uniform has never been brown or blue.  *Id*.
¶ 26.  While on duty, Weeks wore either the standard gray PSP
uniform or standard-issue dark gray coveralls when he conducted

31

school bus inspections. *Id*. ¶¶ 17, 18. Therefore, Plaintiffs' evidence does not support their claim that Weeks wore a PSP Trooper's uniform during the abuse.

Plaintiffs also fail to present evidence of another indication of police authority, whether Weeks's abuse was in any way connected to the execution of his duties as a PSP Trooper. Plaintiffs allege that Weeks abused A.S. and K.K. in the following locations: his garage, the houses of Tina Renninger and Cynthia Bowers, the township building, a bathroom at Monroe Elementary School, Defendant Reed's office, and the blue shed at Monroe Elementary School. *Id*. ¶ 5.

Weeks joined the PSP in 1988, and in 1994 became an inspection station supervisor at the Carlisle PSP barracks. *Id*. ¶¶ 13, 15. One of his duties was to conduct annual school bus inspections. *Id*. ¶ 16. Plaintiffs present no evidence from which a reasonable juror could find that Weeks abused A.S. and K.K. in the course of his PSP duties. While Plaintiffs allege that some of the abuse occurred in or around Monroe Elementary, there is no evidence that this abuse was related to Weeks's performance of the school bus inspections. Plaintiffs' claim that Weeks's job duties gave him "justification and explanation by his own admission to be at the Monroe Elementary School"; however, Plaintiffs fail to present any evidence connecting the instances of abuse at Monroe Elementary to Weeks's performance of his inspection duties. Additionally, while Plaintiffs claim

that Weeks abused K.K. and A.S. in a variety of off-campus locations, Plaintiffs present no evidence linking this abuse with Weeks's PSP duties or showing that he purported to act pursuant to his PSP duties.

A third indication of police authority cited by Plaintiffs also fails to show that Weeks was acting under color of law.  In describing Weeks's abuse of A.S. and K.K., Plaintiffs claim that Weeks possessed a police firearm.  (doc. 92, p. 14).  As support for this claim, Plaintiffs cite paragraph 10 of their statement of material facts.  (doc. 88). While paragraph 10 describes Weeks's dress during the incidents of abuse and notes that "Weeks wore a black belt sometimes that had a gun carrier on it", Plaintiffs present no evidence that Weeks possessed a state-issue firearm during the abuse.  Even if Weeks was in possession of a firearm during the abuse, Plaintiffs present no evidence showing that he used or otherwise employed the firearm to aid in any of the abuse.[8]

Lacking any indicia of state authority during the sexual abuse, we determine that a reasonable fact-finder could not conclude that Weeks was acting under state authority or

---

[8]  We note that in Plaintiffs' Counterstatement of Material Facts in Response to Defendant Cumberland Valley School Districts [sic] Statement of Material Facts, Plaintiffs claim that "someone held a gun to [K.K.]'s head and made A.S. promise not to tell or K.K. was a goner."  Plaintiffs' SMF, CVSD ¶ 21. Plaintiffs, however, do not identify the person making the threat nor do they indicate whether this threat occurred during the abuse or at some other time.

purporting to act pursuant to such authority.  Having failed to create a genuine issue of material fact as to whether Weeks was acting under color of law, we will grant Weeks's motion for summary judgment.

     E.   *George Kelly*

     George Kelly, a PSP Trooper who investigated the abuse of K.K. and A.S., has also moved for summary judgment. Plaintiffs contend that in conducting the investigation, Kelly violated their Fourteenth Amendment right to protection from interference with the familial relationship.  We will grant Kelly's motion for summary judgment.

     Plaintiffs' Fourteenth Amendment claim for interference with the familial relationship is based on the same due process right asserted in their claim against CVSD. Specifically, Plaintiffs claim that Kelly "intentionally discouraged and sabotaged a proper investigation" into the allegations of sexual abuse because he intended "to protect the Pennsylvania State police and avoid embarrassment and liability on their part in a misguided betrayal of the public trust and his official duties." (doc. 1, ¶ 10).  Plaintiffs also allege that Kelly misled and lied to the parents of A.S. and K.K. "in an effort to interfere with and destroy the relationship between them and their children who had been victimized by the other defendants in his efforts to skewer and disrupt the investigation . . . ." *Id.*

In support of this claim, Plaintiffs review Kelly's actions and point out purported deficiencies in his investigation.  These deficiencies include: failing to investigate Weeks despite his identification by A.S. and K.K. as the abuser, failing to interview several school officials as well as K.K., lying to A.S. by telling her that three people would be arrested, denying A.S.'s requests for a female detective, failing to take A.S. to a barn where she claims some of the abuse occurred, failing to view the floor plan A.S. drew of Weeks's garage, lying to the FBI regarding the number of victims, refusing FBI assistance, failing to have Patti Heile tested for Hepatitis C, and making misrepresentations to the District Attorney's Office.  (doc. 92, pp. 17-18).

Underlying these missteps, according to Plaintiffs, was Kelly's intention to protect Weeks and the PSP from the embarrassment and potential liability associated with any abuse allegations.  (doc. 1, ¶ 10).  Plaintiffs claim that the consequence of Kelly's deficient investigation was an incomplete understanding of how safe Monroe Elementary School was for K.K. and A.S.  According to Plaintiffs, "Without a proper investigation and advice on the actual safety of their children, the Knowles and Stankos were unable to make informed decisions about sending their children to Cumberland Valley School District . . . ."  (doc. 92, p. 18).  Plaintiffs claim that this

intentional failure to properly investigate the allegations violates their Fourteenth Amendment rights.

Kelly contends that the record contains no evidence that his investigation interfered with the Knowles' or Stankos' care, custody, or management of K.K. and A.S.  More generally, Kelly argues that Plaintiffs do not have a constitutionally protected interest in having a police investigation conducted in a particular manner.  (doc. 115, p. 8).

We will dismiss Plaintiffs' claim against Kelly for the same reasons that we dismissed the similar Fourteenth Amendment claim against CVSD.  As noted, a § 1983 action for interference with the parent-child relationship must be predicated upon state action deliberately targeting that relationship.  *McCurdy*, 352 F.3d at 830.  State action with only an incidental effect on the parent-child relationship is beyond the scope of what is protected by the Due Process Clause.  *Id*.

As with the due process claim against CVSD, Plaintiffs' claim against Kelly is predicated upon the incidental effect of his alleged misconduct.  That is, the investigatory missteps, taken for the purpose of protecting Weeks and the PSP, had the effect of obscuring the Knowles' and Stankos' ability to judge the safety of Monroe Elementary.  As noted by Kelly, however, Plaintiffs do not allege that Kelly's misconduct was directed toward interfering with the familial relationship of the Knowles and the Stankos and Plaintiffs

present no evidence which might support such a claim.   State
action which may have an incidental effect of interfering with
the familial relationship is too tenuous for Fourteenth
Amendment protection, particularly in light of the guideposts to
which we are to provide strict adherence.   *See McCurdy*, 352 F.3d
at 829. Therefore, Plaintiffs may not proceed on this claim, and
we will grant Kelly's motion for summary judgment.

    F.   *First and Fourth Amendment Claims*

        Plaintiffs' complaint appears to allege that the
Defendants violated their First and Fourth Amendment rights;
however, there are no allegations supporting a claim under
either amendment.   Additionally, Plaintiffs' briefs in
opposition to Defendants' motions for summary judgment make no
mention of either claim.   We will dismiss the First and Fourth
Amendment claims against CVSD, Weeks, and Kelly.

    G.   *Pendant State Law Claims*

        Plaintiffs' complaint also presents state-law claims
for assault, civil conspiracy, intentional infliction of emotion
distress, violation of the right to privacy, and interference
with and destruction of familial bonds.   (doc. 1, ¶ 16).   We
will decline jurisdiction over these claims based on our
dismissal of Plaintiffs' federal claims against CVSD, Weeks, and

Kelly.  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct.

1130, 16 L.Ed.2d 218 (1966); 28 U.S.C. § 1367(c)(3).


                                   /s/William W. Caldwell
                                   William W. Caldwell
                                   United States District Judge

Date: May 15, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


K.K., a Minor, by and through      :
John Knowles and Joanne Knowles,
her parents, and JOHN and          :
JOANNE KNOWLES, individually,
and A.S., a Minor, by and          :
through Lisa Stanko and Scott
Stanko, her parents, and LISA      :
and SCOTT STANKO, individually,
         Plaintiffs                :

         vs.                       :   CIVIL NO. 1:CV-04-2290

GERALD WEEKS, GEORGE KELLY,         :
ROBERT J. REED, CUMBERLAND
VALLEY SCHOOL DISTRICT, and        :
JOHN DOES I, II, III, IV,
VI, VII, VIII, IX and X,           :
         Defendants


O R D E R


     AND NOW, this 15th day of May, 2007, upon

consideration of Defendants' motions for summary judgment (docs.

51, 52, 53), and pursuant to the accompanying Memorandum, it is

ordered that:

          1.  The motions for summary judgment of
          Cumberland Valley School District, Gerald
          Weeks, and George Kelly are granted;

          2.  Defendants Cumberland Valley School
          District, Gerald Weeks, and George Kelly are
          dismissed;

          3.  Plaintiffs' state-law claims against
          Cumberland Valley School District, Gerald
          Weeks, and George Kelly are dismissed for
          lack of jurisdiction;

        4.  John Doe Defendants I, II, III, IV,
VI, VII, VIII, IX, and X are dismissed.


                              /s/William W. Caldwell
                              William W. Caldwell
                              United States District Judge