IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

```
K.K., a Minor, by and through   :
John Knowles and Joanne Knowles,
her parents, and JOHN and       :
JOANNE KNOWLES, individually,
and A.S., a Minor, by and       :
through Lisa Stanko and Scott
Stanko, her parents, and LISA   :
and SCOTT STANKO, individually,
         Plaintiffs             :

         vs.                    :   CIVIL NO. 1:CV-04-2290

GERALD WEEKS, GEORGE KELLY,     :
ROBERT J. REED, CUMBERLAND
VALLEY SCHOOL DISTRICT, and     :
JOHN DOES I, II, III, IV,
VI, VII, VIII, IX and X,        :
         Defendants
```

*M E M O R A N D U M*

*I.     Introduction*

Plaintiffs John and Joanne Knowles, individually and on behalf of K.K., a minor, and Lisa and Scott Stanko, individually and on behalf of A.S., a minor, filed a lawsuit under 42 U.S.C. § 1983, alleging that Defendants Cumberland Valley School District ("CVSD"), Gerald Weeks ("Weeks"), George Kelly ("Kelly"), and Robert J. Reed ("Reed") violated their federal constitutional rights to be free from interference in one's familial relationship and to be free from sexual or other violent assault.  On May 15, 2007, we granted motions for summary judgment filed by CVSD, Weeks, and Kelly, and dismissed the John Does.  (doc. 117).  We now consider Reed's motion for

summary judgment. (doc. 120). Upon review of the briefs, we will grant the motion, and we will decline to exercise jurisdiction over the remaining state-law claims.

*II.     Background*

In sections A and B, we quote relevant portions of the factual summary set forth in detail in our prior Memorandum. *See K.K. ex rel. Knowles v. Weeks*, No. 1: CV-04-2290, 2007 WL 1455888, at *1-*2 (M.D. Pa. May 15, 2007). In section C, we add background necessary for consideration of Reed's motion for summary judgment.

Plaintiffs' lawsuit arises out of alleged acts of sexual abuse committed by, among others, Defendant Reed against A.S. and K.K., two minor students at Monroe Elementary School in Cumberland Valley School District.

*A.     Abuse of A.S.*

A.S. entered Monroe Elementary School as a kindergarten student and remained at Monroe until the beginning of fifth grade. CVSD Statement of Material Facts ("SMF"), ¶ 12. Her parents are Plaintiffs Scott Stanko and Lisa Stanko. *Id*. ¶ 13. According to A.S., she was sexually abused beginning in second grade and lasting through fifth grade. *Id*. ¶ 17, 18. A.S. first revealed the abuse on February 7, 2003, in a note to Lisa Stanko, and she continued to write notes about the abuse over an extended period of time. *Id*. ¶¶ 16, 24. Stanko turned

2

the notes over to the Pennsylvania State Police ("PSP").  *Id*. ¶ 16.  A.S. was sexually abused for the first time in second grade in a bathroom at Monroe Elementary School by Defendant Reed.  Plaintiffs' SMF, CVSD ¶ 17.  According to A.S., other incidents of sexual abuse occurred on and off school property at various locations including: a school bathroom, a blue maintenance shed, a garage, homes, and the township building.  CVSD SMF ¶ 20.

The alleged abusers included a number of different people; however, Reed, a custodian at Monroe Elementary, is the only school employee named as a defendant in this action.  *Id*. ¶ 19.

Prior to revealing the abuse to her mother, A.S. never informed anyone at CVSD, including the school's principal, Anna Maria Enders, about the abuse and she never sought treatment from the school nurse.  CVSD SMF ¶¶ 21, 22, 25.  A.S. claims that she did not tell anyone about the abuse because Trooper Kelly threatened her and her family.  Plaintiffs' SMF, CVSD, ¶ 21.  Defendants contend that A.S. could not identify any independent witness who observed the sexual abuse, CVSD SMF ¶ 26, although A.S. believes that Mr. Yingst, a Monroe Elementary teacher, knew about the abuse.  Plaintiffs' SMF, CVSD ¶ 26.  A.S. withdrew from Monroe Elementary School in November 2002.  Plaintiffs' SMF, Kelly ¶ 1.

*B. Abuse of K.K.*

K.K. was a special education student at Monroe Elementary School from kindergarten in 1997 until 2002. Like A.S., K.K. alleges that she was sexually abused at many of the same locations as A.S. Weeks SMF ¶ 5. Her parents are Plaintiffs John and Joanne Knowles. CVSD SMF ¶ 2. According to Plaintiffs, K.K. first complained to her parents about irritation from the sexual abuse on October 8, 2002. Plaintiffs' SMF, CVSD ¶ 5.[1] In response to K.K.'s complaints, the Knowles took her to an OB/GYN. *Id*. On October 16, 2002, K.K. first described her injuries and identified Reed by his picture in the school yearbook. *Id*. ¶ 6. On October 17, 2002, Joanne Knowles contacted Principal Anna Maria Enders at Monroe Elementary School and informed her of the sexual assault allegedly committed by Defendant Reed. *Id*. ¶¶ 9, 27. On October 18, 2002, K.K. described some of Reed's abusive conduct to her parents. *Id*. ¶ 6. Prior to K.K.'s disclosure in October 2002, the Knowles had no suspicion that K.K. was being abused. CVSD SMF ¶ 7. In response to K.K.'s disclosure of the abuse, the Knowles withdrew her from Monroe Elementary School. Plaintiffs' SMF, Kelly ¶ 1. K.K. was transferred to the middle school and left to be home schooled on December 19, 2002. *Id*.

---

[1] CVSD contends that this occurred on October 18, 2002; however, the record cited by CVSD does not contain a reference to this date.

*C.   Abuse Allegations Against Robert J. Reed*

Reed was employed by CVSD as a custodian and was responsible for maintenance work both inside and outside of Monroe Elementary School. Reed SMF ¶ 41. CVSD hired Reed in February 1976. *Id*. ¶ 40. From 1976 until he was suspended for the abuse allegations, Reed had not been disciplined by CVSD for any reason. *Id*. ¶ 42. During the same period, Reed had never been the subject of sex abuse allegations although two CVSD officials claimed to have seen Reed asking K.K. to dance for him. *Id*. ¶ 43; Plaintiffs' SMF ¶ 43. Reed's daughter had previously made allegations of sexual abuse against Reed in the 1990s; however, she later recanted her allegations. Reed SMF ¶ 48. Additionally, York County Children and Youth investigated the allegations and determined that they were unfounded. *Id*. ¶ 49. Aside from the parents of K.K. and A.S., there were no other complaints of inappropriate sexual touching made regarding Reed or any of the other defendants. Reed SMF ¶ 25.

Cumberland County Children and Youth Services ("CYS") investigated the allegations made against Reed and, according to Lisa Stanko, the "investigation came back indicated on Mr. Reed." Plaintiffs' SMF ¶ 45. According to Reed, however, CYS determined that the allegations were "unfounded." Reed SMF ¶ 45. The Pennsylvania State Police did not file any criminal charges against Reed with respect to Plaintiffs' abuse allegations. *Id*. ¶ 46.

5

*III.     Discussion*

    *A.   Standard of Review*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, we may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  In reviewing the evidence, we must construe facts and inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 553 (1986).  Summary judgment must be entered for the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  *Id.* at 586-87, 106 S.Ct. at 1356, 89 L.Ed.2d at 552 (citations omitted).

The moving party bears the initial responsibility of stating the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2253, 91 L.Ed.2d at 274.  It can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving

party's case." *Id.* at 325, 106 S.Ct. at 2253-54, 91 L.Ed.2d at 275.

An issue is "genuine" "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A fact is "material" when it would affect the outcome of the trial under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211.

When a moving party has carried the burden under Rule 56, the burden shifts to the nonmoving party to demonstrate that an issue of material fact exists. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87, 106 S.Ct. at 1356, 89 L.Ed.2d at 552 (citations omitted). The nonmoving party "must present *affirmative evidence* in order to defeat a properly supported motion for summary judgment," and cannot "simply reassert factually unsupported allegations contained in [the] pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citation omitted). "If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S.Ct. at 2511, 91 L.Ed.2d at 212 (citations omitted). Factual averments in briefs do not

satisfy the nonmoving party's burden.  *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir. 1992).

>    *B.   Intentional Interference with the Parent-Child Relationship Claim*

Plaintiffs first claim that Reed's alleged abuse violated their Fourteenth Amendment right to be free from interference with the parent-child relationship.  (doc. 125, p. 8).  Plaintiffs contend that the Due Process Clause prohibits governmental interference with the familial relationship, protects parents' rights to make critical decisions about the upbringing of their children, including the right to control their children's education, and provides a protected liberty interest in preserving the life and safety of a minor child.  *Id*. at 6-8.  According to Plaintiffs, "abuse by school personnel acting under color of law is an act that constitutes an interference with the physical safety, care, custody and control of a minor child, as it has unimaginable repercussions on all aspects of the parent/child relationship."  *Id*. at 8.

In moving for summary judgment, Reed argues, correctly, that "[n]owhere, in the Plaintiffs [sic] Complaint is there an allegation that the sexual abuse or threatening the lives of the minor Plaintiffs or engaging in conspiracies to injure Plaintiffs or intentionally inflicting emotional distress upon the Plaintiffs were accomplished as a means to deliberately destroy, the parent-child relationship."  (doc. 121, p. 10).

8

Therefore, according to Reed, "Any effect on the family is only incidental to abuse directed at the children." *Id.* at 11.

We agree that Plaintiffs fail to present any evidence suggesting that Reed's alleged abuse of the children deliberately targeted the parent-child relationship. As discussed in our prior Memorandum, a Fourteenth Amendment claim for interference with the familial relationship requires action deliberately targeting the relationship. *See* doc. 117, pp. 21-24. Courts do not extend Fourteenth Amendment protection to every state action which might negatively affect the parent-child relationship. *Id.* at 22; *see also McCurdy v. Dodd*, 352 F.3d 820, 830 (3d Cir. 2003) (explaining: "It would . . . stretch the concept of due process too far if we were to recognize a constitutional violation based on officials actions that were not directed at the parent-child relationship."). Plaintiffs do not allege nor do they point to any evidence showing that Reed's purported abuse of A.S. and K.K. was directed at the parent-child relationship. Plaintiffs appear to argue that Reed has interfered with the familial relationship simply by committing the alleged abuse because the abuse "has unimaginable repercussions on all aspects of the parent/child relationship." (doc. 125, p. 8). Without evidence showing that Reed's abuse was directed at affecting the Plaintiffs' parent-child relationship, however, the "repercussions" are an

incidental effect of such abuse and are not protected by the Fourteenth Amendment.

     *C.   Sexual Abuse Claim*

Plaintiffs also claim that Reed's sexual abuse violated their federal constitutional right to be free from sexual or other violent assault. (doc. 125, pp. 8-10). Reed has moved for summary judgment on this claim, arguing that he was not acting under color of state law during the alleged abuse. (doc. 121, pp. 11-14).

According to Reed, the abuse "cannot fairly be attributable to the state because the alleged actions are purely private in nature." (doc. 121, p. 12). First, Reed argues that the traditional function of a school is to educate students. As a custodian, Reed does not perform the traditional state function of a school district and, therefore, was not acting under color of state law. *Id*. Second, Reed argues that the alleged sexual abuse was "motivated by purely private desires having absolutely nothing to do with his employment as a custodian for the school district." *Id*. at 13. Reed points to a lack of evidence showing that he exercised power over K.K. and A.S. possessed by virtue of his position as a CVSD custodian. *Id*. Further, Reed claims that his employment did not enable him to assault A.S. or K.K, either on school grounds or elsewhere. *Id*. According to Reed, Plaintiffs have not shown that Reed was ever alone with students, that students came to his office, or

10

that his employment otherwise placed him in a position that would have enabled the abuse.  *Id*.

In opposing Reed's motion for summary judgment, Plaintiffs argue, without support or citation to the record, that "Reed could not have acted but for the authority and position devolved upon him by the School District.  He used the position to which he was entrusted and gained access to the children because of his position while acting in the scope of his employment."  (doc. 125, pp. 10-11).  Therefore, Plaintiffs argue, Reed's conduct "is fairly attributable to the state" and satisfies § 1983's color of state law requirement.  *Id*. at 11.

Plaintiffs' unsupported allegations that Reed used his position to gain access to A.S. and K.K. are insufficient to sustain their burden for opposing summary judgment.  As argued by Reed, Plaintiffs have not presented any evidence showing that Reed abused the authority granted to him as a CVSD employee.

In pursuing a claim under 42 U.S.C. § 1983, "'[a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law.'"  *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995) (quoting *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993)).  Plaintiffs must show that Reed acted "under color of state law" as part of a prima facie case under § 1983. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254, 101

L.Ed.2d 40 (1988).  "The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law."  *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) (citing *Versarge v. Township of Clinton, N.J.*, 984 F.2d 1359, 1363 (3d Cir. 1993)).

In conducting a color of law analysis, we must be careful not to attribute otherwise private conduct to the state simply because the actor is a state employee.  Indeed, "[i]t is well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state."  *Mark*, 51 F.3d at 1150.  In our prior Memorandum granting summary judgment in favor of CVSD, Weeks, and Kelly, we summarized the color of state law requirement as follows: "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *West* 487 U.S. at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).  Typically, state employment is sufficient to render a person a state actor.  *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 24 (3d Cir. 1997).  Every act of an on-duty state employee, however, is not state action for purposes of § 1983.  *Id.*  'For instance, a state employee who pursues purely private motives and whose interaction with the victim is unconnected with his execution of official duties does

12

not act under color of law.' *Id.* (citing *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1150 (3d Cir. 1995)). . . . 'Thus, the essence of section 1983's color of law requirement is that the alleged offender, in committing the act complained of, abused a power or position granted by the state.' *Id.*" (doc. 117, p. 27).

In accordance with these cases, there must be a connection between Reed's interaction with A.S. and K.K. and the execution of his official duties as a CVSD custodian. Another court in this circuit, in evaluating a motion to dismiss, described this requirement as follows: "Complaints involving an abuse of state power by a public employee must allege a nexus between a defendant's interaction with the victim and the defendant's execution of his or her official duties." *Nadig v. Nagel*, 272 F. Supp.2d 509, 512 (E.D. Pa. 2003) (citing *Bonenberger*, 132 F.3d at 23). In *Jojola v. Chavez*, 55 F.3d 488 (10th Cir. 1995), the Tenth Circuit affirmed a district court's dismissal of a § 1983 complaint for failing to allege such a nexus. The complaint alleged that a school custodian forcibly molested the plaintiff in a classroom during the school day. *Id.* at 490. After endorsing the Third Circuit's approach in *Mark*, the court concluded that the plaintiff had not satisfied § 1983's color of law requirement because the complaint failed to allege that the custodian "enticed [the victim] into the

13

classroom through the use or misuse of any state authority he may have possessed." *Id*. at 494.

Here, while Reed was a state employee due to his position as a custodian at CVSD, Plaintiffs do not present evidence showing that Reed exploited his position as a custodian to engage in the purported abuse. First, Plaintiffs argue that Reed "could not have acted but for the authority and position devolved upon him by the School District." (doc. 125, p. 10). As discussed, however, it is well-settled that Reed's status as a state employee, on its own, is not enough to satisfy the color of law requirement. *Mark*, 51 F.3d at 1150. Second, Plaintiffs argue that Reed took advantage of his position as a custodian to abuse A.S. and K.K. (doc. 125, pp. 10-11). Both the complaint and the record, however, lack support for this argument. Plaintiffs neither describe nor offer evidentiary support as to how Reed exploited the execution of his official duties at CVSD to abuse A.S. and K.K. Lacking such evidence, Plaintiffs fail to establish the requisite nexus between the actor's interaction with the victim and the execution of his or her official duties. Plaintiffs, in opposing summary judgment, are required to present affirmative evidence to defeat Reed's motion for summary judgment. *Williams*, 891 F.2d at 460. By failing to present affirmative evidence creating a genuine issue of material fact regarding the color of law requirement, Plaintiffs have not satisfied this burden.

*D.   Fourth Amendment Claim*

Reed also moves for summary judgment on Plaintiffs' Fourth Amendment claim. Plaintiffs' complaint alleges that they have a Fourth Amendment right "not to suffer sexual assaults and other violent assaults at the hands of state actors." (doc. 1, ¶ 6). Reed argues that the Fourth Amendment is not applicable here because it applies "in the context of searches, seizures and criminal arrests by police officers." (doc. 121, p. 14).

We reject Plaintiffs' argument that the Fourth Amendment is applicable to their claim against Reed for sexual assault. As we explained in our prior Memorandum, Plaintiffs' claim for violation of their right not to suffer sexual assaults is a claim for infringement of their Fourteenth Amendment Due Process Rights. *See* doc. 117, p. 26 (citing *Ingraham v. Wright*, 430 U.S. 651, 673-74, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Black by Black v. Indiana Area School Dist.*, 985 F.2d 707, 709 n.1 (3d Cir. 1993)). With respect to the Fourth Amendment, the Supreme Court has explained:

> It has been said of the Fourth Amendment that its "overriding function . . . is to protect personal privacy and dignity against unwarranted intrusion by the State." *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966). *But the principal concern of that Amendment's prohibition against unreasonable searches and seizures is with intrusions on privacy in the course of criminal investigations. See Whalen v. Roe*, 429 U.S. 589, 604 n. 32, 97 S.Ct. 869, 879, 51 L.Ed.2d 64 (1977).

15

*Ingraham v. Wright*, 430 U.S. 651, 673, n.42, 97 S.Ct. 1401, 1414 (1977) (emphasis added).  As Plaintiffs' claim does not concern intrusion on their privacy in the course of a criminal investigation, Plaintiffs may not proceed on a Fourth Amendment theory against Reed.

  *E. State-Law Claims*

  Plaintiffs' complaint also presents state-law claims for assault, civil conspiracy, intentional infliction of emotion distress, violation of the right to privacy, and interference with and destruction of familial bonds.  (doc. 1, ¶ 16).  As with our prior Order, we will decline jurisdiction over these claims based on our dismissal of Plaintiffs' federal claims against Reed.  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); 28 U.S.C. § 1367(c)(3).

          /s/William W. Caldwell
          William W. Caldwell
          United States District Judge

Date: September 21, 2007

```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

K.K., a Minor, by and through :
John Knowles and Joanne Knowles,
her parents, and JOHN and      :
JOANNE KNOWLES, individually,
and A.S., a Minor, by and      :
through Lisa Stanko and Scott
Stanko, her parents, and LISA  :
and SCOTT STANKO, individually,
    Plaintiffs                 :

    vs.                        :   CIVIL NO. 1:CV-04-2290

GERALD WEEKS, GEORGE KELLY,    :
ROBERT J. REED, CUMBERLAND
VALLEY SCHOOL DISTRICT, and    :
JOHN DOES I, II, III, IV,
VI, VII, VIII, IX and X,       :
    Defendants

*O R D E R*

    AND NOW, this 21st day of September, 2007, upon consideration of Defendant Robert J. Reed's motion for summary judgment (doc. 120), filed June 7, 2007, and pursuant to the accompanying Memorandum, it is ordered that:

1. Defendant Robert J. Reed's motion for summary judgment is granted;

2. The claims alleged against Defendant Robert J. Reed are dismissed;

3. Plaintiffs' state-law claims against Robert J. Reed are dismissed for lack of jurisdiction;

4. The Clerk of Court shall close this file.

                                        /s/William W. Caldwell
                                        William W. Caldwell
                                        United States District Judge